Cornelius COOPER, Michael Edwards, Charcella Green, Patricia Harris, Sarah Jean Harris, Irene Mccullers, and Carolyn Wilson, Plaintiffs,

v.

SOUTHERN COMPANY, Georgia Power Company, Southern Company Services, Inc., and Southern Company Energy Solutions, Inc., Defendants.

No. CIV.A. 100–CV–2231–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 31, 2003.

R. Lawrence Ashe, Jr., Nancy E. Rafuse, Susan Elisabeth Himmer, Paul Hastings Janofsky & Walker, Atlanta, GA, for Movant.

Michael B. Terry, Joshua F. Thorpe, Steven Rosenwasser, Bondurant Mixson & Elmore, Atlanta, GA, J. Keith Givens, Angela Joy Mason, Cochran Cherry Givens Smith & Sistrunk, Dothan, AL; Hezekiah Sistrunk, Jr., Atlanta, GA; Jock Mi-

chael Smith, Tuskegee, AL; Johnnie L. Cochran, Jr., Los Angeles, CA; The Cochran Firm, Schnieder Kleinick Weitz Damashek, New York, NY, for Plaintiffs.

W. Ray Persons, King & Spalding, Atlanta, GA, Richard Gerakitis, Stephen William Riddell, Charles A. Hawkins, Frederick Cobb Dawkins, Ashley Zeiler Hager, Sheldon W. Snipe, Troutman Sanders, Atlanta, GA, Eric Jon Taylor, Walter Christopher Arbery, Kelly D. Ludwick, Hunton & Williams, Atlanta, GA, for Defendants.

### ORDER

### ORINDA D. EVANS, District Judge.

This civil matter alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and 42 U.S.C. § 1981 is presently before the court on all Defendants' motion for summary judgment on the individual claims of Plaintiff Carolyn Wilson. For the reasons set forth below, Defendants' motion is GRANTED.

### I. *Facts*

 The following facts are undisputed unless indicated otherwise. Plaintiff was hired by Defendant Georgia Power Company ["GPC"] in 1985. Third Am. Comp. at ¶ 118. She held various positions within that organization through approximately December 1997. *Id.* In late 1997, Plaintiff applied for a position with Defendant Southern Company Energy Solutions, Inc. ["SCES"].[1] *Id.* at 121. SCES is a

---

1. Defendants The Southern Company ["TSC"] and Southern Company Services, Inc. ["SCS"] move for summary judgment on the grounds that Plaintiff has never been employed by nor did she ever apply for positions at TSC or SCS. Defendant GPC moves for summary judgment on the grounds that Plaintiff's employment with GPC ended prior to the relevant time period. Plaintiff has failed to respond to GPC's motion and is deemed to have abandoned her claim against GPC. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001).

A plaintiff must be an "employee" to bring a Title VII lawsuit. *Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir.1998). An "employee" for Title VII purposes is an "individual[ ] who compensation from an employer." *Id.* at 1243. An "employer" is a "person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). The analysis of whether a party is an employer appears to be the same under Title VII and § 1981. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998) (noting that these statutes have the same requirements of proof and use the same analytical framework); *Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 61 n. 2 (D.D.C.1996); *Sargent v. McGrath*, 685 F.Supp. 1087, 1089 (E.D.Wis.1988); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 245 n. 3 (E.D.N.Y.1994). Thus, Plaintiff has standing to sue TSC and SCS only if it can be shown that TSC and SCS constituted "employers" from whom Plaintiff received compensation.

It is undisputed that TSC is a holding company which owns the stock of all other Defendants named in the complaint but has no employees. Womack Aff. ¶ 9. Plaintiff asserts that Defendants, including TSC, created SCS as a company-wide human resources department and use SCS's involvement in personnel policy-making and employee selection processes to maintain "substantial involvement" in SCES's personnel decisions. Pla. Resp. to Def. Mot. for S.J. at 34. Plaintiff alleges that Defendants have submitted the declarations of SCS employees who claim involvement in the selection processes at issue in this case. However, with respect to the evidence offered in support of Defendants' motion for summary judgment, only declarant Anthony Roberts is an SCS employee and his testimony is completely unrelated to any employment decision affecting Plaintiff.

Plaintiff has failed to point to facts sufficient to support her argument that TSC or SCS is liable for any discriminatory acts. *See Wood v. Southern Bell Telephone and Telegraph Co.*, 725 F.Supp. 1244, 1249–50 (N.D.Ga.1989). Accordingly, Defendants' motion for summary judgment is GRANTED with respect to TSC, SCS and GPC.

non-utility subsidiary of TSC which develops and sells unregulated, competitive energy-related products and services.

In July 2000, SCES had operations in Georgia, Alabama, Florida and Mississippi. During this time, SCES had six separate business units: Energy Services, the Finance Center, Good Cents, PowerCall Security, Premier Home, and Technical Consulting Services. According to Defendants, each of the SCES units performs very different functions. For example, the Energy Services unit assists large commercial, federal, and industrial customers with reducing energy costs and solving power quality problems. The PowerCall Security unit is responsible for selling and monitoring residential and commercial security and fire alarm systems. The Premier Home unit offers cable television, internet access, long distance telephone, electric and water submetering and billing services for multi-family sites. The Finance Center unit is or was responsible for handling transactions such as loan originations and consumer loan sales for commercial customers and employees.

The position for which Plaintiff applied in late 1997 was within SCES's Finance Center unit. The job posting for this position noted that it would be filled within a pay grade range of exempt two through exempt five; according to Defendants, the pay grade depended on the incumbent's experience and education. Karla Fuller, the hiring manager, was involved in writing the job description for the position and deciding on the possible pay grade range to be listed on the job posting. Defendants contend that Fuller did not assign a job title to the position within SHIPS, Defendants' employee database, but left the assignment of the SHIPS job title to the Human Resources Department. According to Fuller, the descriptive job title for the position was Finance Center Supervisor.

In December 1997, Plaintiff was offered and accepted this position. The offer letter stated that the position was being filled was "Project Analyst Senior"[2] at exempt level two. While she accepted the job in late December 1997, Plaintiff did not begin working at SCES in the Finance Center until February 1998. In her position in the Finance Center, Plaintiff reported to the Finance Center Manager and initially was responsible for handling the origination of consumer loans for commercial customers, establishing employee loans, entering those loan records in the company's personnel database and coaching and training Finance Center staff. Later, as the Finance Center changed and evolved, Plaintiff's duties also changed. For example, when the Finance Center stopped originating loans, Plaintiff became responsible for facilitating the bad debt reported by SCES's loan purchaser, Fannie Mae. Plaintiff admits that her position within SCES is unique and that she is not aware of anyone else who performs a job similar to hers.

Although the letter Plaintiff received at the time she accepted the position indicated that the position's title was Project Analyst Senior, the SHIPS database actually listed the Finance Center Supervisor position as Project Analyst III. Pla. Dep. II at 48. Plaintiff discovered this discrepancy sometime in 2000. *Id.* Plaintiff acknowledges that after she learned the company's SHIPS database listed her as a Project Analyst III, her job responsibilities did not change and she continued to

2. Apparently, this is the SHIPS job title which corresponds to the descriptive title Finance Center Supervisor.

sign letters using her functional job title of Finance Center Supervisor.

In February 1998, when Plaintiff began her position as Finance Center Supervisor, she earned a monthly salary of $2,692, or $32,304 annually. In November 1998, Plaintiff received a 15.45% increase to $3,108 per month, or $37,296 annually. Five months later, in March 1999, Plaintiff received a 4% increase to $3,232 per month, or $38,784 annually. At that time, Plaintiff also received a $7,460 incentive award, which was a figure equal to 20% of her salary, and a "spot award" in December of $4,241.51. In February 2000, Plaintiff entered into an incentive agreement with SCES in which Plaintiff had an opportunity to receive sizable additional bonuses. In March 2000, Plaintiff received a 4% increase in salary to $3,361 per month, or $40,332 annually. At that time, Plaintiff also received a $7,758 incentive award, which was a figure equal to 20% of her salary.

Defendants contend that in order to set compensation ranges for its various employee positions, SCES typically conducts market tests of the positions to compare salary rates to those of other similar companies in similar industries. At SCES, the job title "Project Analyst" is a broad classification that encompasses numerous job descriptions. Thus, Defendants contend, in order to set specific compensation rates for a position, the actual job duties must be examined. According to Defendants, no action was taken at the time Plaintiff moved into the Finance Center to compare her compensation with anyone else in SCES because the Finance Center Supervisor position was not like any other position that existed anywhere else in the Company.

In November of 1999, Plaintiff applied for a Business Analyst II position with SCES. Karla Fuller was the hiring manager for this position and the successful candidate was to report to Fuller. This position involved managing working capital requirements of the Energy Services unit, monitoring working capital forecasts, assisting project managers with progress payment requests, account reconciliation, monitoring of invoicing of customers, and managing accounts receivable. According to Defendants, the preferred qualifications for the position were a bachelor's degree in finance, management, or accounting; experience with the Excel spreadsheet program; experience in the construction industry; and good oral and written communication skills. Even though Plaintiff did not possess all of these qualifications, Fuller selected Plaintiff for an interview because Fuller was familiar with Plaintiff's job skills and experience. Defendants contend that Fuller wanted to hire an individual who could move into the position with little or no training.

Fuller evaluated Plaintiff as performing well during the interview. Fuller believed that another candidate, Sarah McFall, also performed well during the interview. The position was awarded to McFall. Defendants contend that McFall was awarded the position because, unlike Plaintiff, McFall had a bachelor's degree in accounting, had relevant specialized experience in construction accounting, and because Fuller believed that McFall was better prepared to move into the position with little or no training or supervision.

This lawsuit was filed on July 27, 2000. In the complaint, Plaintiff alleges that Defendants discriminated against her by subjecting her to a hostile work environment, improperly denying her promotions, paying her less than her white co-workers, failing to perform performance evaluations for Plaintiff, demoting Plaintiff, and by employing promotion and compensation policies which had a discriminatory impact on black employees.

## II. *Defendants' Motion for Summary Judgment*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [defendant] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail in its motion for summary judgment, Defendants must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on Defendants' motion, the Court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If Defendants make a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

Under Title VII, an employer may be found liable for unlawful discrimination under any one of three discrete theories: disparate treatment discrimination, pattern and practice discrimination, or disparate impact discrimination. *EEOC v. Joe's Stone Crab*, 220 F.3d 1263, 1273 (11th Cir.2000).[3] The first two theories require proof of discriminatory intent, while the third does not. *Id.* at 1273. Defendants argue that summary judgment is appropriate here because Plaintiff has failed to establish a claim of intentional discrimination or disparate impact. Plaintiff objects, arguing that there are genuine issues of material fact precluding summary judgment as to both Plaintiff's intentional discrimination and disparate impact claims.

### A. *Intentional Discrimination*

To establish a prima facie case of race discrimination under a disparate treatment theory, Plaintiff may offer either direct or circumstantial evidence of discriminatory intent. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (11th Cir.2000). If the plaintiff presents direct evidence of discrimination, the defendant is then required to prove by a preponderance of the evidence that it would have taken the adverse employment action even in the absence of discrimination.

If the plaintiff provides sufficient circumstantial evidence to support a prima facie case, a legal presumption of unlawful discrimination arises and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. The defendant's burden is "exceedingly light" and is "one of production, not proof." *Id.* at 802, 93 S.Ct. 1817. If the defendant satisfies its burden, the presumption of discrimination is eliminated and the plaintiff must be given an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant is a pretext for discrimination. *Id.*

A plaintiff may also use statistical evidence to establish either a prima facie case of discrimination or pretext. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir.1991).

**3.** Section 1981 provides a cause of action only for claims of intentional discrimination. *See Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir.1999).

Statistics may be used to establish an individual plaintiff's claim that a pattern or practice of discrimination existed, or simply to bolster the plaintiff's circumstantial evidence of individual disparate treatment. Under the pattern and practice theory, the plaintiff must provide evidence sufficient to establish that impermissible discrimination was the employer's "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274–75, 1286–87 (internal quotation marks and citation omitted). Even if the statistical evidence is insufficient to meet this standard, evidence establishing a discriminatory pattern "is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue." *Parker v. Burnley,* 693 F.Supp. 1138, 1153 (N.D.Ga.1988) (internal quotation marks and citation omitted). Whether the plaintiff argues that the statistical evidence supports a pattern or practice claim or simply constitutes evidence of disparate treatment, "[t]he ultimate inquiry remains whether the plaintiff has demonstrated that the defendant *intentionally* discriminated in refusing to enter into a contractual relationship." *Brown,* 939 F.2d at 952 (citing *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987)).

### 1. *Individual Disparate Treatment*

#### *Hostile Work Environment*

In the complaint, Plaintiff alleges her supervisor made racist comments. *See* Third Am. Comp. ¶ 119. In their motion for summary judgment, Defendants argue that Plaintiff cannot make a prima facie case of hostile work environment because she cannot show that the alleged conduct occurred during the relevant period. Plaintiff does not respond to this argument and thus is deemed to have abandoned this claim. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern*

*Ry. Co.,* 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001).

#### *Promotion Discrimination*

■ To establish a prima facie case for alleged failure to receive a promotion, Plaintiff must demonstrate that 1) she was a member of a protected class; 2) she applied and was generally qualified for the up-grade; 3) she did not receive the promotion; and 4) a similarly situated white employee received promotion over Plaintiff. *See, e.g., Denney v. City of Albany,* 247 F.3d 1172, 1183 (11th Cir.2001). In the complaint, Plaintiff alleges that she was discriminated against with respect to two positions: Project Manager, for which she applied in 1997, and Business Analyst, for which she applied in 1999. With respect to the 1997 Project Manager position, Defendants argue that Plaintiff's claim is untimely because the events associated with it fall outside the applicable statute of limitations. Plaintiff does not respond to this argument and therefore is deemed to have abandoned her claim with respect to this position.

■ With respect to the 1999 Business Analyst position, Defendants do not dispute that Plaintiff can establish a prima facie case but argue that Plaintiff cannot overcome Defendants' asserted non-discriminatory reason for the decision not to hire her for this position. Defendants contend that Plaintiff was not hired for this position because she did not possess all of the qualifications the hiring manager sought and that the successful candidate did possess these qualifications. Specifically, Defendants provided evidence that Karla Fuller, the hiring manager, sought an applicant with a bachelor's degree in finance, management, or accounting; Excel experience; construction industry experience; and good oral and written communication skills. Fuller Dec. ¶ 4; Fuller Dep. at 114, 119, 121–22. Defendants also

contend that Plaintiff was not hired for this position because Fuller believed that the successful candidate was better prepared to move into the position without extensive supervision or training. Fuller Dec. ¶ 7.; Fuller Dep. 119, 121–22. These reasons constitute a legitimate, non-discriminatory reason for the decision not to hire Plaintiff for the position. *See, e.g., Denney,* 247 F.3d at 1183 (that successful candidate possessed the qualities that decisionmaker considered dispositive in choosing among the pool of qualified applicants constituted legitimate non-discriminatory reason); *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1254 (11th Cir.2000) (that successful candidate was better qualified with respect to three of the four criteria listed in the position application constituted legitimate non-discriminatory reason).

■ Plaintiff first attempts to establish pretext with respect to Defendants' assertion that Plaintiff was not hired for the position because she did not possess as many of the preferred qualifications as the successful candidate. Specifically, Plaintiff argues that her lesser qualifications were not the real reason for the decision because the preferred qualifications are not relevant to the position in question. Plaintiff argues that the actual relevant qualification for the position is experience in performing the functions listed in the job posting and that she, rather than the successful candidate, has that experience. However, Defendants are entitled to determine which qualifications are most desirable in a candidate for a particular position and it is not the job of this Court to second-guess those business decisions. *Denney,* 247 F.3d at 1186 n. 8. The preferred qualifications—a bachelor's degree in finance, management, or accounting; Excel experience; construction industry experience; and good oral and written communication skills—are directly relevant to the performance of the position at issue, which involved the management of

cash flow for Defendants' growing construction company. *See* Fuller Dep. at 106–07. That Plaintiff has experience in relevant job functions does not establish that Defendants' desire to hire a candidate who possessed more of the qualifications *they* deemed relevant does not indicate a discriminatory intent and thus does not constitute evidence of pretext. *Denney,* 247 F.3d at 1185 (holding that plaintiffs failed to establish pretext where they completely failed to show discriminatory intent in the selection of specific subjective criteria or in the choice to focus on those criteria).

Plaintiff also attempts to establish pretext with respect to Defendants' assertion that Fuller, the hiring manager, believed that the successful candidate was better prepared than Plaintiff to move into the position without extensive supervision or training. Specifically, Plaintiff argues that she had performed the job functions relevant to the position at issue for almost two years at the time the position was filled and that the successful candidate did not have comparable experience. Plaintiff points to evidence that Fuller believed that the successful candidate would need to learn more about the job, that the successful candidate's degree did not provide her with any information about the SCES programs which Plaintiff believed were necessary to the position, that the successful candidate had limited construction industry experience, and that Plaintiff had more experience with a specific software application. Plaintiff also points to evidence that she had a better interview than the successful candidate.

Again, however, this evidence is insufficient to establish that Defendants did not believe that the successful candidate could move into the position with less supervision than Plaintiff, and thus is insufficient to establish pretext. Fuller testified that

McFall, the successful candidate, only needed to learn more about the specific mechanics of the unit's business and its unregulated aspects. Fuller Dep. at 119–20. While McFall's experience in the construction industry may have been limited, Plaintiff points to no evidence that she herself had any such experience. That Plaintiff may have performed better in the interview does not establish that Fuller could not have believed that McFall was actually more qualified, especially because there is no evidence that interview performance was considered a significant measure of an applicant's need for supervision. Plaintiff's opinion that she would need less supervision because she had more experience with software programs and systems she considered important does not constitute evidence that Fuller did not believe McFall in fact would need less supervision than Plaintiff. In short, Plaintiff offers little evidence other than her own opinion that she would need less supervision or training than the successful.

■ The proper pretext analysis is whether Plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997) (internal quotation mark and citations omitted). Defendants are certainly familiar with their own labor needs and are entitled to determine whether certain qualifications make a candidate more suitable for a particular position. *Murphy v. Yellow Freight System, Inc.*, 832 F.Supp. 1543, 1548 (N.D.Ga.1993) ("The use of subjective factors in making employment decisions cannot be sufficient to support a finding of discrimination."). Plaintiff contends that the subjective reasons asserted are not credible based on evidence in the record. However, while the evidence Plaintiff offers suggests that

the successful candidate required some training in the position, Plaintiff has not come forward with any evidence to establish that the decisionmakers with respect to this position did not actually find that the successful candidate would require less supervision than Plaintiff. Further, even if Plaintiff could establish that her experience made her more qualified, "[i]n a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted.... [D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." *Denney*, 247 F.3d at 1187 (internal quotation marks and citations omitted). In this case, it cannot be said that the juxtaposition of Plaintiff's experience in performing relevant job functions and the successful candidate's possession of the stated preferred qualifications for the positions meet that standard. Plaintiff's evidence is thus insufficient to permit a reasonable factfinder to conclude that the reasons given by Defendants were a pretext for intentional discrimination.

■ Plaintiff has also provided statistical evidence of racial imbalances in Defendants' hiring and promotion practices as evidence of pretext. Specifically, Plaintiff has offered statistical reports to support her claim that Defendants' hiring and promotion practices had a discriminatory effect on black employees. Plaintiff argues that the reports of her expert, Dr. Madden, which find statistically significant disparities in the promotion of black employees relative to white employees, are evidence from which a reasonable factfinder could determine that intentional discrimination occurred. Defendants contend that Plaintiff's generalized statistics

are insufficient to support Plaintiff's claims of intentional discrimination.

■ As the Supreme Court has noted, while statistical evidence may allow the District Court to "determine ... that the (racial) composition of defendant's labor force is itself reflective of restrictive or exclusionary practices ... such general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to hire." *McDonnell Douglas*, 411 U.S. at 805 n. 19, 93 S.Ct. 1817 (internal quotation marks and citation omitted). In this case, Plaintiff's statistical evidence is insufficiently tailored to support her individual claims.

Plaintiff's statistics compare the promotion rate of employees within the same pay grade who perform similar job functions; however, these statistics generally fail to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to hiring decisions. Plaintiff does not provide statistics comparing employees with equivalent work experience in specific job categories or job progressions, or outcomes for those employees, both black and white, who had actually applied for posted positions challenged by Plaintiff. Plaintiff relies instead on a statistical analysis of a company-wide data pool and makes no attempt to narrow the data pool to the locations in which she worked or the positions which she challenges. As this Court noted in the order denying class certification, the probative value of Plaintiff's statistical evidence is therefore highly questionable, in significant part due to the treatment of factors such as experience, education and specific promotion processes. *Cooper v. Southern Company*, 205 F.R.D. 596, 613–14 (N.D.Ga.2001).

The analytical deficiencies of Plaintiff's statistics diminish the probative value of this evidence such that it cannot by itself support a claim of disparate treatment. *See Brown v. American Honda Co.*, 939 F.2d 946, 952 (11th Cir.1991) (holding that summary judgment was appropriate where plaintiff's statistical evidence, which lacked specific analytical foundation and thus failed to show that employer maintained discriminatory intent, was insufficient to establish prima facie case or pretext); *Hawkins v. Ceco Corp.*, 883 F.2d 977, 985 (11th Cir.1989) (holding that plaintiff's statistical evidence failed to establish prima facie case or pretext where evidence failed to make specific analytical comparisons); *cf. James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 330 (5th Cir.1977)[4] (holding that plaintiff's evidence of statistical disparities in hiring, promotion and compensation was sufficient to support claim of intentional discrimination where the employment decisions were based on *completely* subjective criteria).

Because Plaintiff has failed to establish pretext with respect to all of Defendants' asserted reasons, Defendants are entitled to summary judgment with respect to this position. *See Chapman v. A.I. Transport*, 229 F.3d 1012 (11th Cir.2000); *Combs*, 106 F.3d at 1529.

In the motion for summary judgment, Defendants argue that Plaintiff cannot establish a prima facie case of promotion discrimination with respect to two positions which were not specifically raised in the complaint but which Plaintiff mentioned during discovery: a Support Representative Marketing position in November

---

**4.** This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

1998 and a Customer Service Section Supervisor in 1999. Plaintiff does not respond to these arguments and thus is deemed to have abandoned any claims with respect to these positions.

Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's promotion discrimination claims.

*Compensation Discrimination*

■ Defendants first argue that this claim is barred by the statute of limitations because Plaintiff became aware of the allegedly discriminatory acts outside the statutory period. "Claims of discrimination accrue when the plaintiff is informed of the discriminatory act." *Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir.1998). Defendants contend that Plaintiff should have filed her claim by February 2000, based on Plaintiff's testimony that she first began to believe that she was discriminated against with respect to pay during February 1998. Pla. Dep. II at 188. In response, Plaintiff contends that her claim is not barred because compensation discrimination constitutes a continuing violation bringing her claim within the statute of limitations. The Court of Appeals for the Eleventh Circuit has held that "race based, discriminatory wage pay-

ments constitute a continuing violation of Title VII." *Calloway v. Partners Nat. Health Plan*, 986 F.2d 446, 449 (11th Cir. 1993); *see also Bazemore v. Friday*, 478 U.S. 385, 395, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). Because Plaintiff remains employed by Defendants and apparently contends that the alleged compensation discrimination continues, her claim is timely.

■ To make out a prima facie case of compensation discrimination, Plaintiff must establish the following four elements: 1) that she is a member of a protected class; 2) that she received low wages; 3) that similarly situated persons outside the protected class received higher wages; and 4) that she was qualified to receive the higher wages. *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir.1991) (applying the test in an age discrimination case).[5] Defendants do not dispute that Plaintiff is a member of a protected class or that she received lower wages than her alleged comparators but argue that they are entitled to summary judgment on this claim because Plaintiff has failed to establish that she was similarly situated to any of her white co-workers who received higher pay.

**5.** Plaintiff contends that to establish a prima facie case of compensation discrimination, she is only required to show that she was treated unfairly with respect to compensation and that Defendants operated with an improper intent. Plaintiff relies on the holding in *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981) to support her proposition that "claims for … wage discrimination can be brought under Title VII even though no member of the [non-protected group] holds an equal but higher paying job." Pla. Resp. To Def. Mot. S.J. at 2 (citing *Gunther*, 452 U.S. at 168, 101 S.Ct. 2242). In *Gunther*, the Supreme Court determined that a female plaintiff was not required to meet the equal work standard to bring a sex discrimination claim under Title VII. The Court expressly noted that the issue before it was not whether the plaintiff could state a

prima facie case under Title VII without such evidence. *Gunther*, 452 U.S. at 168 n. 8, 101 S.Ct. 2242. Plaintiff also cites *E.E.O.C. v. Reichhold Chems., Inc.*, 988 F.2d 1564, 1570 (11th Cir.1993), in which the Eleventh Circuit acknowledged the Supreme Court's holding in *Gunther* that "a Title VII plaintiff could prevail if she could prove unfair treatment and an intent to discriminate." *Id.* However, the Eleventh Circuit did not find that the holding eliminated the requirement that Plaintiff show that she was paid less than a co-worker who was similarly situated but only that Title VII affords a less stringent standard as to similarity than the Equal Pay Act. *Id.* In any case, as discussed below, Plaintiff has failed to show that she was treated unfairly or that Defendants set Plaintiff's compensation with an improper intent.

■ In the complaint, Plaintiff asserts that her base salary was lower than three white employees holding the same "Project Analyst" title as Plaintiff—Dena Faessel, Kathy Robb, and Jimmy Allen—and three white employees holding titles lower than Plaintiff's—Marianne Mitchell Ellis, Reba Jones, and Barbara Stokes. Defendants contend that Plaintiff cannot establish a prima facie case because she cannot establish that she performs functions similar to her alleged comparators and thus cannot establish that she was similarly situated. "In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him." *Id.*

As Finance Center Supervisor, Plaintiff has been responsible for assisting with the handling of loan originations and loan sales, establishing employee loans, recording employee loans on the SHIPS database, and coaching and training Finance Center staff and interns. Plaintiff is also responsible for facilitating the bad debt reported by SCES's loan purchaser, Fannie Mae. As noted above, Plaintiff admits that her position within SCES is unique and that she is not aware of anyone else who performs a job similar to hers.

Plaintiff alleges that Dena Faessel, who is white, was a Project Analyst Senior that, at $65,000 per year, was paid more than Plaintiff while holding the same job title as Plaintiff during the period in question. However, Faessel worked in the Power-Call Security unit in Pensacola, Florida. When she held the SHIPS job title of Project Analyst Senior, Faessel was responsible for performing auditing and due diligence analyses of companies which Powercall was interested in acquiring and working with those newly-acquired companies to commence business operations.

Faessel's functional job title was Project Manager or Project Executive. Faessel holds an associate's degree in business administration, a bachelor's degree in finance, and a master of business administration degree.

Plaintiff also alleges that Kathy Robb, who is white, was a Project Analyst Senior that, at $54,000 per year, was paid more than Plaintiff while holding the same job title as Plaintiff. However, Robb works in the Energy Services unit in Atlanta, Georgia. While she held the SHIPS job title of Project Analyst Senior, Robb was responsible for sales and marketing management for SCES's commercial lighting retrofit business. In this position Robb conducted oversight of SCES's contractual obligation to retrofit every Tyson poultry processing plant, hatchery, and feed mill in order to help Tyson comply with specific EPA requirements. Her duties included surveying each facility, performing an analysis of lighting savings and pricing installation of lighting equipment for each facility, and managing audits. Robb oversaw a staff of auditors to manage retrofits at Tyson facilities nationwide. Robb also prepared proposals for retrofits and presented those proposals to SCES and Tyson senior management, worked closely with Tyson's energy director, negotiated new contracts with electrical contractors, explained new energy savings technologies, and maintained a strong working relationship with Tyson. Robb's functional title was Team Leader for SCES's Lighting Retrofit Department.

Jimmy Allen works for SCES as a Project Manager. From April 1998 through November 1998, Allen held the SHIPS database title of Project Analyst Senior. During that time, Allen was responsible for overseeing commercial construction projects, including contract negotiation and on-site construction

management, managing day-to-day activities for large commercial construction projects for SCES's customers, ranging from smaller lighting installation projects to the construction of major chiller plants, negotiating contracts with customers and contractors, working with customers and contractors to develop and implement construction plans, managing business and construction problems as they occurred, and handling customer complaints. Allen typically worked on construction sites rather than in an office environment. Allen's functional job title during that time was Project Superintendent.

Nor are the three white co-workers with lower titles than Plaintiff's similarly situated to Plaintiff. Marianne Ellis worked for the PowerCall unit in Atlanta. Roberts Dec. ¶ 6. Ellis initially served as Executive Secretary to David Sherrill, General Manager within SCES in Atlanta, then to Anthony Roberts, PowerCall's Operations Manager from 1998 to 2000. *Id.* Ellis was responsible for performing various secretarial duties, as well as managing her supervisor's appointments. *Id.*

Barbara Stokes worked as a Project Specialist in the PowerCall business unit in Atlanta. *Id.* at ¶ 5. In this capacity, Stokes was responsible for supporting PowerCall customer service operations, entering customer orders, managing customer accounts, and managing billings for PowerCall's residential and commercial security system customers. *Id.*[6]

Plaintiff does not attempt to show that she performed the same functions or even the same type of work as these alleged comparators. Instead, Plaintiff argues that

Defendants cannot rely on differences in job function to justify any pay disparity because Defendants allegedly use job title, rather than function, as an internal measure of pay equity. This argument goes to whether Defendants have a legitimate non-discriminatory reason for pay disparity and does not cure Plaintiff's failure to show that she performed the same type of functions as these alleged comparators. Because Plaintiff fails to show that she was similarly situated to these alleged comparators, she cannot show that she was treated unfairly with respect to compensation.

Nor can Plaintiff establish that Defendants were motivated by a discriminatory intent when they made decisions with respect to Plaintiff's compensation. Fuller testified that to determine Plaintiff's compensation for the Project Analyst position, she had to determine Plaintiff's then-current salary and could then increase that figure by either 6 or 8%, because this was the procedure for setting compensation when filling a position internally. Fuller Dep. at 36, 61–62. Plaintiff attempts to establish discriminatory intent by contradicting the evidence that Fuller believed that a 6 to 8% increase was appropriate in setting compensation for an internal hire. Specifically, Plaintiff points to evidence that another SCES employee received a 12% increase in salary after he was promoted just three months after Plaintiff. However, Plaintiff does not contend that Fuller set the compensation for the other employee. Plaintiff also points to the testimony of Steven Wilkinson, a human resources representative, that a manager has discretion to raise a promoted employee's salary more than 8% when the 8% increase

---

**6.** Plaintiff also asserted in her complaint that she was improperly paid less than Reba Jones. Defendants contend that Plaintiff cannot establish that Jones performed functions similar to Plaintiff's and thus cannot establish a prima facie case but fail to point to any evidence in the record to support this position. However, Plaintiff does not respond to this argument and thus is deemed to have abandoned her claim with respect to this comparator.

would be insufficient to equalize the promoted employee's compensation with that of similarly situated employees. That Fuller had the discretion to increase Plaintiff's salary more than 8% to equalize her pay with respect to similarly situated co-workers but did not might constitute evidence of discriminatory intent. However, as discussed above, Plaintiff has failed to establish that she was paid less than similarly situated employees and thus cannot show that Fuller had the discretion to increase Plaintiff's salary more than 8% but chose not to.

Plaintiff also contends that she can demonstrate discriminatory intent with evidence that other black employees in her department received compensation below the minimum of their pay grade level. This evidence is insufficient to establish discriminatory intent. Plaintiff points to no evidence with respect to the overall compensation levels within the department or evidence with respect to the employment history of these other employees. That some black employees within Plaintiff's department received low compensation does not, on its face, constitute evidence of a pattern of discrimination and is not evidence that Defendants operated with a discriminatory intent in setting Plaintiff's compensation.

Plaintiff also argues in her response to Defendants' motion for summary judgment that she can establish a prima facie case of compensation discrimination by showing that she was paid less than white employees who possessed the same level of education and experience and who performed the same job function as Plaintiff. In support of this contention, Plaintiff points to her own affidavit, in which she apparently describes her job functions, and to the reports of Plaintiff's expert, Dr. Janice Madden. However, Plaintiff did not include her affidavit in the Appendix to Plaintiff's Response to Defendants' Motion

for Summary Judgment. With respect to Dr. Madden's reports, Plaintiff contends that these reports support her contention that she was paid less than white employees who possessed the same level of education and experience and who performed the same job function as Plaintiff.

Plaintiff specifically relies on Dr. Madden's findings in her third report, attached to Plaintiff's Appendix to Plaintiff's Response to Defendants' Motion for Summary Judgment as Exhibit 18. Plaintiff contends that Dr. Madden's estimation that "Caucasians with the same education, experience and job function" as Plaintiff earned more than similarly situated black employees, including Plaintiff, constitutes evidence that Plaintiff was paid less than white co-workers performing the same job functions as Plaintiff. However, Dr. Madden's report contains no specific information, much less evidence, with respect to identity of these alleged comparators or their job functions. Indeed, Dr. Madden states that she developed her estimate "using the earnings of promoted employees identified by counsel as comparable to the plaintiff[ ]." App. to Pla. Resp. to Def. Mot. S.J., Ex. 18 at 2. There is no specific detail in the exhibit with respect to the information counsel provided to Dr. Madden, making it impossible to determine whether the estimate Dr. Madden developed is an accurate proxy for evidence that a proper comparator was paid more than Plaintiff.

Plaintiff also suggests that Dr. Madden's earlier reports, offered in support of the motion for class certification, provide evidence of a pattern and practice of discrimination which is sufficient to state a prima facie case of compensation discrimination. However, for the reasons stated below, these reports are insufficient to establish a pattern and practice claim and further lack any detail with respect to Plaintiff's specific compensation claims and thus do not

support Plaintiff's attempt to establish a prima facie case.

Plaintiff also alleged in the complaint that she was discriminated against with respect to compensation when she failed to receive a second $5,000 pay increase in March 1999, which she alleges Defendants promised to her. Defendants argue that Plaintiff cannot establish a prima facie case with respect to this claim because she has not put forward any evidence that she failed to receive the second pay increase because she is black. Plaintiff did not respond to this argument and thus is deemed to have abandoned this claim.

Because Plaintiff has failed to provide sufficient evidence to establish a prima facie of compensation discrimination, Defendants' motion for summary judgment is GRANTED with respect to this claim.

### SHIPS Coding Mistake

In the complaint, Plaintiff alleges that she was discriminated against when Defendants offered her a Project Analyst Senior position but coded Plaintiff's position as Project Analyst III within Defendants' SHIPS database and then corrected her job title in March 2000 to bring her title into conformance with the coding. Defendants argue that Plaintiff cannot establish a prima facie case because the title change does not constitute an adverse employment action and because Plaintiff cannot show that a similarly situated white employee was treated more favorably than she was. However, Plaintiff fails to respond to these arguments and thus is deemed to have abandoned this claim.

### Performance Evaluations

Similarly, Plaintiff alleged in the complaint that she was discriminated against when she failed to receive performance evaluations after 1997. Defendants contend that Plaintiff cannot establish a prima facie case because she admits that she received performance evaluations after 1997. Defendants further contend that

Plaintiff cannot establish a prima facie case that she received discriminatorily low evaluations because a low evaluation does not constitute an adverse employment action. Plaintiff fails to respond to either of these arguments and thus is deemed to have abandoned this claim.

### 2. Pattern and Practice

Plaintiff has failed to create a genuine issue of material fact as to whether a pattern or practice of discrimination existed. Plaintiff has offered only statistical evidence to support her pattern or practice claim. Under the pattern or practice theory, the plaintiff must provide evidence sufficient to establish that impermissible discrimination was the employer's "standard operating procedure." *Joe's Stone Crab*, 220 F.3d at 1274–75, 1286–87 (internal quotation marks and citation omitted). While "statistics as to [Defendants'] employment policy and practice may be helpful to a determination of whether [Defendants'] refusal to [ ]hire [Plaintiff] in this case conformed to a general pattern of discrimination against blacks," *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. 1817, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re: Employment Discrimination Litig. Against the State of Ala.*, 198 F.3d 1305, 1312 (11th Cir.1999). The analytical deficiencies of Plaintiff's statistical evidence, discussed above, render this evidence insufficient to support a pattern or practice claim.

In addition to Plaintiff's expert reports, Plaintiff offers Defendants' internal personnel documents to support her argument that Defendants maintained a pattern or practice of compensation discrimination. While these documents indicate

some disparity in compensation between black and white employees, these documents are not probative as to whether Defendants intentionally discriminated against Plaintiff during the period in question. The documents indicate average salaries of employees divided by racial classification but do not control for factors such as education, experience or skill level and thus cannot prove that Defendants discriminated on the basis of race. Plaintiff has thus failed to come forward with evidence sufficient to prove that intentional discrimination was Defendants' "standard operating procedure." *Joe's Stone Crab*, 220 F.3d at 1274–75 Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's pattern and practice claim is GRANTED.

## B. *Disparate Impact*

█ Finally, Defendants argue that Plaintiff has failed to establish a claim of disparate impact under Title VII. To establish a claim under a theory of disparate impact, Plaintiff must show 1) the existence of a statistically significant disparity among members of different groups affected by employment decisions; 2) the existence of a specific, facially neutral employment practice; and 3) the existence of a causal nexus between the specific, facially neutral employment practice and the statistically significant disparity. 42 U.S.C. § 2000e–2(k); *Joe's Stone Crab*, 220 F.3d at 1274; *In re: Alabama*, 198 F.3d at 1311–14. Defendants contend that Plaintiff's statistics, which are not adjusted to account for differences among various positions and the respective skill and education levels required, are insufficient to establish a statistically significant disparity required to state a claim. Plaintiff argues in response that her statistical evidence is sufficient to create a genuine issue of material fact precluding summary judgment.

As evidence of a facially neutral policy, Plaintiff points to Defendants' use of subjective criteria in determining which applicants to interview and thus which applicants to hire. While Plaintiff has failed to identify in her response to Defendants' motion for summary judgment a specific policy which has had an impermissibly discriminatory impact on her, Plaintiff provided evidence in his motion for class certification to support his claim that Defendants allowed the use of subjective criteria by decisionmakers in each of its subsidiaries.

█ However, showing that Plaintiff was subject to subjective policies does establish a prima facie case of disparate impact. Plaintiff must also show the existence of a causal nexus between these specific, facially neutral employment practices and a statistically significant disparity. " '[P]laintiff must offer statistical evidence of a kind and degree sufficient to show that *the practice in question* has *caused* the exclusion of applicants for jobs or promotions because of their membership in a protected group.' " *Joe's Stone Crab*, 220 F.3d at 1275 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994–95, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). In this case, Plaintiff has failed to establish that the use of subjective hiring criteria caused a statistical disparity within the promotions for which she applied.

█ To establish the first element of a disparate impact claim, Plaintiff relies on her expert's report which finds statistically significant disparities in the promotion of black employees relative to white employees. As Defendants note, however, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re: Alabama*, 198 F.3d at 1312. Plaintiff's expert reports an over-all statistical disparity between black and white employees in hiring

and promotion by Defendants. However, Plaintiff's statistics—which compare promotions among employees within the same pay grade who perform similar job functions—fail to distinguish between positions in which Defendants' decisionmakers applied the express objective hiring factors and those in which the decisionmakers employed subjective criteria. Further, Plaintiff's evidence generally fails to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to promotions. Plaintiff's evidence also fails to compare outcomes for those employees who actually applied for posted positions. Nor does Plaintiff's evidence distinguish between competitive and non-competitive promotions; such deficiency further undermines the probative value of Plaintiff's statistics. *See Forehand v. Florida State Hospital at Chattahoochee*, 89 F.3d 1562, 1572–73 (11th Cir.1996).

Because of these deficiencies, Plaintiff cannot establish the existence of a causal nexus between a specific, facially neutral employment practice and a statistically significant disparity. *See, e.g., Joe's Stone Crab*, 220 F.3d at 1279. In *Joe's Stone Crab*, the Eleventh Circuit found that the EEOC failed to establish a disparate impact claim where the EEOC presented no evidence that the employer's use of subjective criteria caused minority applicants not to apply or that minority applicants for positions at issue were disadvantaged by the subjective criteria. Similarly, in this case Plaintiff fails to point to any evidence linking Defendants' use of subjective criteria to the alleged statistical disparity. Therefore, Defendants' motion for summary judgment with respect to Plaintiff's disparate impact claim is granted. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1118 (11th Cir.1993) (holding that employer is entitled to summary judgment where plaintiff fails to provide evidence necessary to prove at trial that there is disproportionate impact of employer's policy on black employees).

For the reasons stated above, Defendants' motion for summary judgment [# 202] is GRANTED.

SO ORDERED, this __ day of March, 2003.